**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Jose A. Potes-Arias, being duly sworn, depose and state:

**Introduction**

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), and have been since May 8, 2024. My responsibilities and duties include conducting investigations of alleged manufacturing, distribution, or possession of controlled substances (Title 21, United States Code, Section 841(a)(1)), importation of controlled substances (Title 21, United States Code, Section 952(a)), smuggling of goods into the United States (Title 18, United States Code, Section 545), and related offenses. I am an investigative or law enforcement officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am currently assigned as a Criminal Investigator with the Office of the Special Agent in Charge, San Juan, Puerto Rico. In this capacity, I investigate violations of federal criminal statutes, including offenses involving illegal firearm possession and trafficking.

3. I successfully completed the Criminal Investigator Training Program (CITP) and Homeland Security Investigations Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center (FLETC), Glynco, Georgia. These comprehensive training programs provided instruction on criminal law, investigative techniques,

1

        evidence handling, interviewing, and the identification and investigation of federal firearm offenses, such as but not limited to those prohibited by 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and 18 U.S.C. § 922(o) (illegal possession or transfer of machine guns).

4. My professional background includes prior employment as a State Law Enforcement Communications Officer with the Florida Highway Patrol, where I was responsible for examining criminal histories and managing critical law enforcement information within state and federal systems. Additionally, I served honorably for five years in the United States Marine Corps as an Infantry Squad Leader, attaining the rank of Sergeant. During my time in the Marine Corps, I gained extensive experience with a wide range of weapon systems, from small arms to crew-served weapons. This hands-on experience provided me with a deep understanding of how various firearms operate, how to effectively manipulate and maintain them, and the tactical application of different weapon systems in high-pressure situations. This knowledge has been invaluable in shaping my ability to assess, operate, and respond to firearm-related situations with precision and expertise.

5. Based on my training, education, and professional experience, I am familiar with the methods used by individuals prohibited from possessing firearms, as well as the illegal trafficking, modification, and possession of firearms. I am qualified and have the necessary expertise to investigate violations of federal firearm laws, specifically those defined under 18 U.S.C. §§ 922(g)(1), 922(o), and to provide credible information in support of affidavits for criminal investigations involving these offenses.

6. The facts and information contained in this affidavit are based upon my training and experience, participation in this investigation, personal knowledge and observations

       made during the course of this investigation, as well as the observations of other agents and police officers involved in this investigation. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of records, documents, and other physical evidence obtained during the investigation.

7. This affidavit contains information necessary to support probable cause for a criminal complaint charging Miguel Angel CARMONA-Santos with violations of 18 U.S.C. § 922(g)(1) (Possession of a Firearm and Ammunition by a Convicted Felon), 18 U.S.C. § 922(o) (Unlawful Possession of a Machinegun), and 18 U.S.C. § 922(k) (Possession of a Firearm with an Obliterated Serial Number). It is not intended to include every fact and matter observed by me or known to the United States.

**Facts Supporting Probable Cause**

8. On September 10, 2025, at approximately 06:30 p.m., the PRPD Motorized Unit from Bayamon contacted HSI in reference to a subject that had been arrested in Bayamon.

9. On September 10, 2025, at approximately 4:50 p.m., multiple officers assigned to the Puerto Rico Police Department (PRPD) Motorized Unit were traveling through the intersection of PR-830 and Highway 374 in Bayamón utilizing motorcycle units and patrol vehicles. While traversing the area, the officers observed an individual, later identified as Miguel Angel CARMONA-Santos, operating a black moped (motorcycle) without wearing a helmet, in violation of applicable traffic safety laws.

10. In response to this observed violation, officers initiated a lawful traffic stop by positioning their motorcycles in front of CARMONA-Santos. Rather than complying with the officers' instructions to stop, CARMONA-Santos attempted to evade law enforcement by fleeing on the moped. During his attempt to flee, CARMONA-Santos struck and knocked over one of the officers' motorcycles positioned in front of him. CARMONA-Santos then executed a U-turn and accelerated in an effort to escape.

11. Shortly after completing the U-turn, CARMONA-Santos lost control of the moped, causing the moped to slip and resulting in both CARMONA-Santos and the moped falling to the ground in the middle of the roadway. Upon CARMONA-Santos' impact with the ground, a firearm, specifically a pistol, was observed falling from CARMONA-Santos' rear waistband and landing on the pavement in close proximity to his person.

12. Officers immediately rushed to CARMONA-Santos' location, placed him in custody, and took possession of the aforementioned firearm. The firearm was a Glock .45

caliber pistol with an obliterated serial number and an attached machinegun conversion device, loaded with a 13-round capacity magazine containing twelve (12) .45 caliber rounds, and one round chambered in the pistol. A .45 caliber 21-round capacity magazine loaded with twenty (20) rounds, was visibly located in the cupholder of the moped as well.

13. CARMONA-Santos was then transported to the Rexville Police Station in Bayamon for further processing.

14. As a result of the intervention the following evidence was collected:

    (i)    One (1) Glock Pistol with an obliterated serial number and an attached machinegun conversion device;

    (ii)    One (1) 13-round capacity magazine;

    (iii)    One (1) 21-round capacity magazine;

    (iv)    Thirty-three (33) rounds of .45 Caliber ammunition;

    (v)    One (1) white plastic container holding a substance closely resembling marijuana; and

    (vi)    One (1) Black Samsung Cellphone.

Presented below are images documenting the evidence collected and the modifications observed on the firearm.

 

 

15. Later that day, HSI Public Safety Group (PSG) Investigators arrived at the PRPD Rexville Police Station in Bayamon where CARMONA-Santos was being held. Upon inspection of the firearm, it was visibly apparent that no serial number was present in the areas where Glock firearms typically display serial numbers. Furthermore, upon racking the slide to the rear, it was visibly evident that the firearm was internally equipped with an illegal modification, specifically a chip designed to enable fully automatic firing. This device is commonly referred to as an auto sear or machinegun conversion device.

16. HSI PSG investigators formally advised CARMONA-Santos of his Miranda Rights in his native language, Spanish. CARMONA-Santos voluntarily waived his rights, agreed to speak with federal authorities, and signed ICE Form 73-025.

17. During the interview CARMONA-Santos stated the following:

    a) CARMONA-Santos confirmed to the HSI PSG investigator that the version provided by PRPD officers regarding the manner the intervention took place was accurate and expressed remorse for his actions.

    b) CARMONA-Santos acknowledged ownership of the firearm and stated that he had purchased it in 2022 for $1,000.

    c) CARMONA-Santos further admitted that he was aware the firearm had been unlawfully modified with a chip enabling it to operate in fully automatic mode. CARMONA-Santos disclosed that he had tested this functionality by firing the firearm into the ground.

    d) CARMONA-Santos confirmed that the firearm had an obliterated serial number at the time of purchase and stated that he has made no modifications to the firearm since acquiring it in 2022. The firearm was purchased with both an illegal

       modification to enable fully automatic fire and an obliterated serial number.

    e) CARMONA-Santos acknowledged that he had previously been convicted of a felony and served a term of imprisonment. CARMONA-Santos further stated that he acquired the pistol for his personal safety and out of concern for his well-being following his release from incarceration.

    f) Lastly, CARMONA-Santos stated that the moped he was operating did not belong to him but was the property of his girlfriend.

18. Records checks revealed that, CARMONA-Santos was convicted at the state level on four charges related to attempted murder, conspiracy and the carrying and use of firearms without a valid license in 2015 and was sentenced to a total of (12) years in prison, with the sentences to run concurrently. Records checks further revealed that CARMONA-Santos does not possess a valid license to carry firearms.

19. A functions check was conducted by HSI Special Agent Jose Potes Arias. During the check, it was observed that the trigger would not reset after racking the slide, which is inconsistent with the normal operation of a semi-automatic pistol. Based on my training and experience this result is consistent with the firearm being able to fire automatically more than one shot without manual reloading with a single pull of the trigger.

20. Further, this investigation revealed that no firearms or ammunition were manufactured in the Commonwealth of Puerto Rico; therefore, the firearms or ammunition were shipped or transported through interstate or foreign commerce.

**Conclusion**

21. Based on the facts contained herein, I submit there is probable cause to believe that CARMONA-Santos has committed the following offenses: 18 U.S.C. § 922(g)(1) (Possession of a Firearm and Ammunition by a Convicted Felon), 18 U.S.C. § 922(o) (Unlawful Possession of a Machinegun), and 18 U.S.C. § 922(k) (Possession of a Firearm with an Obliterated Serial Number).

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

*JOSE A POTES ARIAS*
Digitally signed by JOSE A POTES ARIAS
Date: 2025.09.11 15:23:52 -04'00'

Jose A. Potes-Arias
Special Agent
U.S. Homeland Security Investigations

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 5:08 p.m. on the 11th day of September, 2025.

Marcos E. López
Magistrate Judge
United States District Court District of Puerto Rico

9